## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 28 2017, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Browning, Jr.,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | March 28, 2017<br><br>Court of Appeals Case No.<br>15A04-1605-CR-1063<br><br>Appeal from the Dearborn<br>Superior Court<br><br>The Honorable Jonathan Cleary,<br>Judge<br><br>Trial Court Cause No.<br>15D01-1410-F4-051 |

**Brown, Judge.**

[1] John Browning, Jr. appeals his conviction for patronizing a prostitute as a class A misdemeanor. Browning raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

## *Facts and Procedural History*

[2] The facts most favorable to the conviction reveal that in early July of 2014, seventeen-year-old S.M., her baby, and some of her friends were sitting outside the post office in Moores Hill, Dearborn County, when Browning left the gun shop he owned, crossed the street, and approached them. S.M. knew Browning, and they attended the same church. Browning told S.M. her baby was cute and asked if he could take a picture of her. Afterwards, he told S.M. to have a nice day and returned to the gun shop.

[3] About one week later, S.M. walked near the gun shop, Browning yelled at her, and she went into the shop and spoke with him. Browning asked S.M. if she was still looking for a job, and he told her she could break down the unpacked boxes in the shop and also mentioned that she could help him with "personal business." Transcript at 28. S.M. did not understand what Browning meant by the reference to "personal business," and she "just told him [she] would think about it." *Id.* at 29. Browning told her to come back in a couple of days.

[4] Approximately three days later, on July 16, 2014, S.M. returned to the gun shop, and Browning asked her if she had thought about the "personal offer, options [he] gave [her]," S.M. asked him what he meant, and Browning responded "you know what I mean." *Id.* at 32. When S.M. told him that she

did not understand, Browning "offered [her] to have oral sex with him for twenty dollars an hour or half hour or something" and to "have sex with him for a half hour for thirty dollars." *Id.* S.M. felt strange, awkward, and upset, and she left the shop and walked to her mother's residence. S.M. told her mother what had occurred and subsequently called the police and asked for Moores Hill Town Marshall Brent Casebolt.

Marshall Casebolt was dispatched and arrived at S.M.'s mother's residence and spoke to S.M. At first, Marshall Casebolt did not "believe her totally." *Id.* at 67. Marshall Casebolt told S.M. that he would talk with her at a later date and would have her return to the shop wearing a recording device.

On August 12th, 2014, Marshall Casebolt returned to S.M.'s mother's residence with a digital recorder and obtained her mother's permission for its use, and S.M. agreed to wear the digital recorder and return to Browning's shop and record their conversation. Marshall Casebolt demonstrated how to operate the digital recorder. At around 4:30 p.m., she donned the digital recorder and walked to the gun shop, activating the recorder before she entered. Right after she walked in, Browning locked the store's door and lowered the blinds, which made S.M. scared. Marshall Casebolt positioned himself across the street from the shop. After speaking about guns, Browning asked S.M. what she thought about the "personal business." *Id.* at 39. She asked him "one more time what that is," and "that's when he repeated himself about oral sex, paying her for oral sex and to have sex with him" and specifically stated that he was willing to pay "[a]round twenty to thirty dollars for a half hour to an hour." *Id.* at 39, 41.

They also discussed S.M.'s previous sexual experience and various sexual positions and activities. After approximately thirty minutes, S.M. left the shop, stopped the digital recorder, and returned to her mother's residence. Marshall Casebolt met her there, retrieved the digital recorder, and subsequently listened to the recording.

[7] On August 19, 2014, Marshall Casebolt spoke with Browning and told him that he was investigating a complaint made by a seventeen-year old whom he had propositioned for sex, and Browning immediately said that the complainant would be S.M. Browning told Marshall Casebolt that "she was just there and his mind had went to mush and the devil won on this one." *Id.* at 76. Also, on August 21, 2014, Browning told Marshall Casebolt that "the sexual part" was "a personal thing between him and [S.M.]" and that "he had nothing further in mind for her than that." *Id.* at 82. Browning also stated that "this would never happen again and if you took away the variable there was no problem he was fixed," in which the "variable" was S.M. *Id.* at 83.

[8] On October 10, 2014, the State charged Browning with Count I, promoting prostitution of a person under eighteen years of age, a level 4 felony. Also, on January 20, 2016, the State amended the charging information to add Count II, patronizing a prostitute as a class A misdemeanor.

[9] The court held a bench trial on April 14, 2016. At the trial, the State introduced and the court admitted as State's Exhibit 1 the digital recording of the conversation between S.M. and Browning made on August 12, 2014. In the

recording, Browning can be heard saying "[w]ell what we talk about before, twenty dollars for a half hour, something like that?" State's Exhibit 1 at 11:16-11:18. S.M. responded: "Yea." *Id.* at 11:19. S.M. then stated that she was confused by what Browning "meant by that," *id.* at 11:36-11:37, Browning asked whether S.M. was wondering if the work was something of a "sexual nature," *id.* at 12:07-12:10, S.M. replied affirmatively, and Browning asked "well what do you think about that?" *Id.* at 12:14-12:16. S.M. responded that she would have to think about it. Browning told her he was asking for help with whatever S.M. was comfortable with and that he could use help "after hours" on Tuesdays and Thursdays. *Id.* at 13:01-13:02. Browning also told S.M. that he "might be able to afford thirty dollars" for a half hour. *Id.* at 13:30-13:40. Later in the conversation, Browning asked S.M. if she "like[d] porn or not," and she responded that she had never watched it. *Id.* at 19:16-19:20. He further instructed that what they had talked about "stays between me and you." *Id.* at 20:40-20:43. He also asked S.M. what she had done before and if she had any "favorite things" or if there was anything she did not like. *Id.* at 23:31-23:32. Browning then asked if she had ever "masturbated in front of her partner," *id.* at 23:49-23:53, or if she had done "sixty-nine." *Id.* at 24:55-24:57. Browning told S.M. that he could give her "instructions" or "lessons" and that she could "learn from" him. *Id.* at 25:25-25:30. He asked her if her partner had showed her how to "really suck cock," *id.* at 25:45-25:48, and that if she wanted to "get into a guy's pocketbook you learn how to do that." *Id.* at 26:05-26:08.

[10] After the State rested, defense counsel moved for a directed verdict on the evidence on both counts. During the discussion of Browning's motion, the State moved to amend both counts to include August 12th in the range of dates noted in the charging information. The parties agreed with the court that there was a "typographical error" in the charging information in that the date range ended at August 11th. Transcript at 102. The State asserted that the charging information "does say on about or between," that "there is other testimony that the same type of conduct happened prior to that" and that "[t]he recorded conversations just bolster[] her testimony about the prior contact . . . ." *Id.* at 103-104. The State argued that Browning's fundamental rights would not be impacted by the amendment "when there's no allegations or alibi defense or some other prohibition of that date." *Id.* at 104. The parties also discussed how Marshall Casebolt testified during a deposition that the recording occurred on August 11, 2014. The court denied the motion for directed verdict on Count II "because there's been testimony that he did the exact same thing days before . . . ." *Id.* at 107. The court noted that it still could consider the recorded evidence "because it's been admitted without objection." *Id.* The court also granted Browning's motion for directed verdict regarding Count I and denied the State's motion to amend. After the court made its rulings, Browning rested.

[11] The trial court found Browning guilty as charged on Count II and sentenced him to 365 days with sixty days executed and 305 days suspended to supervised probation.

*Discussion*

[12] The issue is whether the evidence is sufficient to sustain Browning's conviction. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[13] The offense of patronizing a prostitute as a class A misdemeanor is governed by Ind. Code § 35-45-4-3, which provides in relevant part:

> A person who knowingly or intentionally pays, or offers or agrees to pay, money or other property to another person:
>
> > (1) for having engaged in, or on the understanding that the other person will engage in, sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) with the person or with any other person; . . .
>
> commits patronizing a prostitute, a Class A misdemeanor.

The charging information alleged that "[o]n, about or between July 10, 2014, and August 11, 2014, in Dearborn County, State of Indiana, [Browning] did knowingly offer to pay money to another person, to-wit: S.M., on the understanding that S.M. would engage in sexual intercourse or other sexual conduct with" him. Appellant's Appendix Volume 2 at 48.

[14] Browning argues that "[t]he most damning evidence from trial came through a taped conversation from August 12, 2014," which is "one day after the charged crime." Appellant's Brief at 9-10. He asserts that "[a] conviction cannot rest on weak facts and conjecture." *Id.* at 10. Browning maintains that S.M. admitted at trial to having a proclivity for lying and that accordingly it is "necessary to carefully examine the taped conversation to ensure her testimony was reliable." *Id.* at 11. He argues that the recording demonstrates that S.M. lied or exaggerated her prior conversations with Browning concerning payment for sex.

[15] The State argues that it presented evidence that, on July 16, 2014, Browning offered S.M. twenty dollars per half hour for oral sex and thirty dollars per half hour for sexual intercourse with him and that his arguments amount to a request that we reweigh the evidence and judge S.M.'s credibility. It also argues regarding the digital recording that "[w]hen an information alleges that an offense occurred 'on or about' a certain date, the State is not limited to presenting evidence of events that occurred on that particular date when time is not an element of the offense." Appellee's Brief at 12. The State argues that it was not limited to events that occurred only before August 11, 2014.

[16] The evidence most favorable to the conviction demonstrates that Browning on or about July 13, 2014, mentioned to S.M. that she could earn money by helping him with his "personal business," and on July 16, 2014, she returned to Browning's gun shop to ask him what he meant by personal business. Transcript at 28. Browning responded that "you know what I mean." *Id.* at 32. When S.M. told him that she did not understand, Browning "offered [her] to have oral sex with him for twenty dollars an hour or half hour or something" and to "have sex with him for a half hour for thirty dollars." *Id.* Based on this conversation, she phoned the police, and Marshall Casebolt on that date spoke with S.M. at her mother's residence about the incident. Also, in the digital recording, Browning can be heard saying "[w]ell what we talk about before, twenty dollars for a half hour, something like that?" State's Exhibit 1 at 11:16-11:18. This statement and others on the recording, as well as Browning's statements to Marshall Casebolt, corroborate S.M.'s testimony regarding the conversation occurring on July 16th.

[17] Browning does not assert that the evidence presented at his bench trial regarding the events of July 16, 2014 are insufficient on their face to prove the elements of patronizing a prostitute. Rather, he argues that S.M.'s credibility is questionable and that she is lying or exaggerating regarding those events. Browning's arguments are merely a request that we reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *See Drane*, 867 N.E.2d at 146.

[18] Based upon our review of the testimony most favorable to the conviction, we conclude that a reasonable trier of fact could have found that Browning knowingly offered to pay money to S.M. with the understanding that she would engage in sexual intercourse or other sexual conduct with him, and that sufficient evidence exists from which the trier of fact could find him guilty beyond a reasonable doubt of patronizing a prostitute as a class A misdemeanor.

## Conclusion

[19] For the foregoing reasons, we affirm Browning's conviction for patronizing a prostitute as a class A misdemeanor.

[20] Affirmed.

Vaidik, C.J., and Bradford, J., concur.